**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CASE NO. 12-21309-CIV-KING

JOSE TRIANA,

      Plaintiff,

v.

JORGE DIAZ, individually and in his capacity
as a police officer of the City of West Miami;
and CITY OF WEST MIAMI, FLORIDA, a
municipality located in Miami-Dade County,
Florida,

      Defendants.

_____/

**ORDER GRANTING FINAL SUMMARY JUDGMENT FOR DEFENDANT
CITY OF WEST MIAMI; AND GRANTING IN PART
DEFENDANT DIAZ'S MOTION FOR SUMMARY JUDGMENT**

THIS CAUSE comes before the Court upon Defendant JORGE DIAZ's Motion for

Summary Judgment and Incorporated Memorandum of Law (DE 56) and Defendant CITY OF

WEST MIAMI's Motion for Summary Judgment and Incorporated Memorandum of Law (DE

57), both of which were filed on July 7, 2014. The Court heard oral argument on both motions on

August 13, 2014. After careful consideration of the pleadings and arguments raised by the

parties,[1] the Court finds that Defendant JORGE DIAZ's motion must be granted in part and

denied in part, and Defendant CITY OF WEST MIAMI's motion must be granted.

_____

[1] In addition to the motions, the Court has also considered Plaintiff's Response in Opposition to
Diaz' Motion for Summary Judgment and Memorandum of Law (DE 76), filed on August 4,
2014, Defendant Officer Diaz' Reply in Support of Summary Judgment (DE 83), filed on August
12, 2014, Plaintiff's Response to the City of West Miami's Motion for Summary Judgment and
Memorandum of Law (DE 75), filed on August 4, 2014, and Defendant City's Reply in Support
of Summary Judgment (DE 84), filed on August 12, 2014.

## I.  BACKGROUND

### A. Procedural Facts

On March 15, 2012, Plaintiff initiated this action by filing a four-count complaint in the Circuit Court for the Eleventh Judicial Circuit in and for Miami-Dade County, Florida against Officer Jorge Diaz,[2] the City of West Miami (the "City"),[3] and the City of West Miami Police Department (the "Police Department"). This action stems from Plaintiff's arrest on May 23, 2009, which he claims was effected without probable cause. As the original complaint raised, *inter alia*, claims under 42 U.S.C. § 1983 for an alleged deprivation of federally protected rights, Defendants timely removed this action pursuant to 28 U.S.C. §§ 1441 and 1446 to the United States District Court for the Southern District of Florida. DE 1. This Court has original jurisdiction because the original complaint presented a federal question and sought to redress the alleged deprivation of Plaintiff's federally protected civil rights pertaining to seizures, arrests, and uses of force under 42 U.S.C. § 1983. Additionally this Court has supplemental jurisdiction over the state law and common law claims raised by the complaint pursuant to 42 U.S.C. § 1367.

On February 25, 2013, the Court granted the Police Department's Motion to Dismiss (DE 20), and dismissed all claims against the Police Department with prejudice. The operative complaint in this matter is the Second Amended Complaint (the "Complaint") (DE 24), which states claims against Officer Diaz for battery (Count I), intentional infliction of emotional distress (Count II), false arrest and imprisonment (Count V), and false arrest and excessive use of force in violation of 42 U.S.C. § 1983 (Count VI), as well as claims against the City for negligent hiring (Count III) and negligent retention and supervision (Count IV).

---

[2] At all times material to the complaint, Officer Diaz was a police officer employed by the City.
[3] The City is a municipality located in Miami-Dade County, Florida.

### B. Facts[4]

Plaintiff is co-owner of a residence located at 6591 SW 15th Street (the "Residence"). DE 58, ¶ 1; DE 76-1, ¶ 1. During the evening of May 23, 2009, Plaintiff's son was having a get-together in the backyard area of the Residence. DE 73-1, ¶¶ 10-11; DE 73-3. Plaintiff's neighbor, Barbara Revuelta, made a noise complaint to the police. DE 73-11. At approximately 10:42 p.m. and 10:47 p.m., respectively, Officer Diaz and a back-up police officer, Officer Eric Guzman, were dispatched to the Residence to respond to the complaint. DE 58, ¶¶ 8, 12; DE 59-2, ¶¶ 5-12; DE 59-13; DE 73-9 at 4-5; DE 73-11 at 4-5. The dispatch operator, Barbara Knowles, identified the Residence as the source of the noise, and the address of Plaintiff's neighbor Barbara Revuelta as the location of the complaining party. DE 58, ¶ 19; DE 59-2, ¶¶ 10-11.  Officer Diaz was the first officer to arrive at the Residence, and Officer Guzman arrived at the Residence a few minutes after Officer Diaz. DE 58, ¶¶ 14, 18; DE 76-1, ¶¶ 14, 18.

While approaching the Residence, Officer Diaz noticed an illegally parked car and issued parking citation. DE 58, ¶ 22; DE 76-1, ¶ 22. As Officer Diaz was writing the citation, he was approached by Plaintiff's son, who asked Officer Diaz if there was a problem. DE 58, ¶ 23; DE 76-1, ¶ 23. Officer Diaz advised Plaintiff's son that he wanted to speak with the owner of the Residence, and asked Plaintiff's son if he knew where the owner was. *Id.* Plaintiff's son told Officer Diaz that the owner of the Residence was not at home. DE 73-3 at 5; DE 59-22 at 3. Officer Diaz spotted Plaintiff on the front porch of the Residence, pointed him out, and told

---

[4] The Court has reviewed the parties' competing statements of material facts, and the following facts are not genuinely disputed. *See generally* Part II *infra.*

Plaintiff's son "that's the owner right there, I know him."[5] DE 59-22 at 6; DE 58, ¶ 25; DE 76-1, ¶ 25.

Officer Diaz approached Plaintiff on the front porch of the Residence and asked Plaintiff to produce identification. DE 58, ¶ 26; DE 76-1, ¶ 26. Rather than produce his identification, Plaintiff told Officer Diaz to "get off my property." DE 58, ¶ 27; DE 58-3 at 26-27. Officer Diaz responded by grabbing Plaintiff by the arm, forcibly turning him around and twisting his arm behind his back, and pushing him up against a wall in order to handcuff him. *Id.*; DE 76-1, ¶ 30. Officer Diaz then dragged Plaintiff from the front porch down to the street level and handcuffed him. DE 76-1, ¶ D61.

### C.   Facts in Dispute

Plaintiff's Corrected Statement of Undisputed and Disputed Facts (DE 76-1) states that, while being led by Officer Diaz to the police cruiser in handcuffs, Plaintiff turned to his family and asked them to call his attorney and the captain of the Police Department, whereupon Officer Diaz violently elbowed Plaintiff in the eye.[6]

## II. LEGAL STANDARD ON MOTION FOR SUMMARY JUDGMENT

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be or is genuinely disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, eleccontrinically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers or other materials; or showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1). "In determining whether summary judgment is appropriate, the facts and inferences from the facts are viewed in the light most

---

[5] Officer Diaz was familiar with who owned the Residence by virtue of having previously responded to a noise complaint at the Residence on November 1, 2008 and having issued Plaintiff a Promise to Appear related to that alleged noise violation. DE 58, ¶ 17; DE 76-1, ¶ 17.

[6] This statement is supported by one witness' affidavit, as well as the deposition testimony of another. DE 73-3 at 8-9; DE 73-22, ¶ 6.

favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine material fact and that it is entitled to judgment as a matter of law." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Further, the existence of a "scintilla" of evidence in support of the non-movant's position is insufficient; there must be evidence on which the jury could reasonably find for the non-movant. *Andersen v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Likewise, a court need not permit a case to go to a jury when the inferences that are drawn from the evidence, and upon which the non-movant relies, are "implausible." *Matsushita*, 475 U.S. at 592-94; *Mize v. Jefferson City Bd. Of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

At the summary judgment stage, the judge's function is not to "weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. In making this determination, the Court must decide which issues are material. A material fact is one that might affect the outcome of the case. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* The Court must also determine whether the dispute about a material fact is indeed genuine, that is, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see, e.g., Marine Coatings of Ala., Inc. v. United States*, 932 F.2d 1370, 1375 (11th Cir. 1991).

*Vignoli v. Clifton Apartments, Inc.*, No. 12-24508, Report and Recommendation, DE 101 (S.D. Fla. Oct 2, 2014) (Torres, Mag. J.).

### III. DISCUSSION

Defendants' respective motions urge the Court to enter summary judgment on their behalf with respect to each count of the Complaint. Officer Diaz's motion asserts that he is entitled to both statutory and qualified immunity from the battery, intentional infliction of emotional distress, false arrest/imprisonment, and section 1983 claims against him because his arrest of Plaintiff was supported by probable cause. The City's motion asserts that Plaintiff's claims for negligent hiring, supervision, and retention must fail because: 1) the City is entitled to sovereign immunity against claims related to its policy decisions, 2) Plaintiff has failed to offer

any evidence which establishes that Officer Diaz engaged in conduct which fell outside the course and scope of his employment as a police officer, and 3) Plaintiff has failed to offer any evidence which establishes that the City was put on notice of Officer Diaz's alleged propensity to effectuate arrests without probable cause or to employ excessive force. For the reasons cited herein, the Court finds that Officer Diaz's motion must be granted in part and denied in part, and the City's motion must be granted.

### A. False Arrest, Excessive Use of Force, and Battery

With respect to Plaintiff's state law claims for false arrest and battery, as well as Plaintiff's 42 U.S.C. § 1983 claims for false arrest and excessive use of force, Officer Diaz argues he is entitled to summary judgment because: 1) Plaintiff's arrest was supported by probable cause and 2) a finding that the arrest was supported by probable cause compels summary judgment on the excessive force and battery claims. While the Court agrees that Plaintiff's arrest was supported by probable cause, Officer Diaz's argument with respect to the excessive force and battery claims misses the mark. *See Lee v. Ferraro*, 284 F.3d 1188, 1197 (11th Cir. 2002) (citing *Jackson v. Sauls*, 206 F.3d 1156, 1171 (11th Cir. 2000) (holding a claim for use of excessive force during a legal stop or arrest is a discrete claim)).

### 1. The False Arrest Claims

It is the law of this Circuit and the state of Florida that the existence of probable cause to arrest constitutes a bar to claims for false arrest. *Skop v. City of Atlanta*, 485 F.3d 1130, 1137-38 (11th Cir. 2007); *see also Miller v. City of Jacksonville*, 603 So. 2d 1310, 1311 (Fla. 1st DCA 1992). Additionally, government officials are entitled to qualified immunity from civil liability in their individual capacities when performing discretionary functions of their office "insofar as their conduct does not violate clearly established statutory or constitutional rights . . . ." *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). In his motion, Officer Diaz argues that he believed he had probable cause to arrest Plaintiff for violation of either: 1) Miami-Dade County's excessive noise ordinance[7] or 2) Florida's obstructing justice statute.[8] In response, Plaintiff merely points to a dispute of fact pertaining to whether Officer Diaz personally observed excessive noise emanating from the Residence, and argues that Plaintiff's evidence supports the conclusion that Officer Diaz did not. Plaintiff is correct that this dispute of fact precludes summary judgment based on a finding that Officer Diaz had probable cause to arrest Plaintiff by virtue of having observed a violation of the excessive noise ordinance. *Cf.* § 901.15(1), Fla. Stat. (2009) ("A law enforcement officer may arrest a person without a warrant when: (1) The person has committed a . . . misdemeanor . . . or violated a municipal or county ordinance in the presence of the officer."). However, for the reasons cited herein, the Court finds that summary judgment must be granted in favor of Officer Diaz on Plaintiff's false arrest claims nonetheless, because Officer Diaz had probable cause to arrest Plaintiff for violating Florida's obstructing justice statute. § 843.02, Fla. Stat. (2009).

The existence probable cause is a fact-specific inquiry which is dependent on the elements of the purported crime. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). Florida's obstructing justice statute provides:

> Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082 or s. 775.083.

---

[7] *See* Chapter 21, art. IV, §21-28(b) of the Miami-Dade County Code of Ordinances.
[8] *See* § 843.02, Fla. Stat. (2009).

§ 843.02. Fla. Stat. (2009).[9] "In order to establish a violation of section 843.02, the State is required to establish that: '(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that duty.'" *H.A.P. v. State*, 834 So. 2d 237 (Fla. 3d DCA 2002) (quoting *Slydell v. State*, 792 So. 2d 667, 671 (Fla. 4th DCA 2001).

The following facts make it plain that Plaintiff was in violation of section 843.02, Florida Statutes: 1) Officer Diaz was dispatched to the Residence to investigate a complaint of excessive noise,[10] 2) investigating the report of a misdemeanor is indisputably a legal duty of a police officer, 3) Plaintiff is an owner of the Residence; 4) Officer Diaz asked Plaintiff to produce his identification so that he could issue him a Promise to Appear; and 5) Plaintiff refused Officer Diaz's lawful order to produce identification, and instead told Officer Diaz to, "get off my property." Thus, Plaintiff's actions on the evening of May 23, 2009 constituted obstruction of a police officer in the lawful execution of a legal duty, and Officer Diaz had probable cause to arrest Plaintiff. Moreover, it is irrelevant whether or not Officer Diaz announced which Florida Statute he believed Plaintiff to be in violation of at the time of arrest, because "[t]he validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Lee*, 284 F.3d at 1196 (quoting *Bailey v. Bd. Of Cnty. Comm'rs of Alachua Cnty.*, 956 F.3d 1112, 1119 n.4

---

[9] A first degree misdemeanor is a criminal violation punishable by a definite term of imprisonment not to exceed one year. § 775.082(4)(a), Fla. Stat. (2009).

[10] Plaintiff's attempt to dispute this fact by citing to affidavits and/or depositions of witnesses who were at the Residence on the evening of Plaintiff's arrest fails to establish a genuine dispute. Officer Diaz has established through competent evidence that: 1) Plaintiff's neighbor called in a noise complaint regarding excessive noise emanating from the Residence on May 23, 2009; and 2) Officer Diaz was dispatched to the Residence by police dispatcher Barbara Knowles to respond to the noise complaint. Citing to statements of witnesses who were at the Residence who merely claim that the music was "not very loud" does nothing to dispute whether a complaint was made and whether Officer Diaz was dispatched to investigate it.

(11th Cir. 1992). Accordingly, the Court finds that Officer Diaz is entitled to summary judgment in his favor as to Plaintiff's state law and 42 U.S.C. § 1983 claims for false arrest.

### 2.   The Excessive Use of Force and Battery Claims

Once summary judgment is granted in Officer Diaz's favor on the false arrest claim, Plaintiff's claim that Officer Diaz used excessive force must be analyzed independently. *See Lee*, 284 F.3d at 1197. Officer Diaz argues 1) he is entitled to qualified immunity from the section 1983 excessive use of force claim and 2) Plaintiff's battery claim must also fail because physical contact incident to a valid arrest cannot form the basis of a battery claim. To defeat a claim to qualified immunity, a plaintiff must demonstrate: "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow*, 457 U.S. at 818). Based on the facts of this case, the Court finds that Officer Diaz is not entitled to summary judgment on Plaintiff's excessive force and battery claims.

The law of this Circuit states:

> The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest. *See Graham v. Connor,* 490 U.S. 386, 394-95 (1989). The Supreme Court has held that "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985) (internal quotations omitted)). Moreover, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). The Supreme Court has established that, in order to balance the necessity of using some force attendant to an arrest against the arrestee's constitutional rights, a court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.; see also, e.g., Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir.1986)

(holding that, in determining if force was reasonable, courts must examine (1) the need for the application of force, (2) the relationship between the need and amount of force used, and (3) the extent of the injury inflicted). *Graham* dictates unambiguously that the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force, which is measured by the severity of the crime, the danger to the officer, and the risk of flight.

*Lee*, 284 F.3d at 1197-98.

The Court has already determined that Plaintiff's arrest was supported by probable cause. However, the facts of this case necessitate separate analyses of: 1) the force used to secure and subdue Plaintiff in handcuffs and 2) the force used *after* Plaintiff was secured and subdued in handcuffs. *See generally id.* Based on the undisputed facts, which include that Officer Diaz was surrounded by at least five of Plaintiff's guests at the time he arrested Plaintiff, it was objectively reasonable for Officer Diaz to grab Plaintiff by the arm, twist his arm behind his back, push him up against a wall, and drag him down to the street level to handcuff him and place him under arrest. *Zivojinovich v. Barner*, 525 F.3d 1059, 1072 (11th Cir. 2008) (determining whether the amount of force used was objectively reasonable presents a question of law). However, there is evidence in this case upon which a reasonable jury could rely to find that Officer Diaz violently elbowed Plaintiff in the eye *after* Plaintiff was subdued and secured in handcuffs. Moreover, there is absolutely no evidence in this case which indicates any reasonable law enforcement need for Officer Diaz to have elbowed Plaintiff in the eye under those circumstances. And, even though Officer Diaz had the lawful power to effect a custodial arrest and secure Plaintiff in handcuffs, no reasonable officer could have possibly believed that he then had the lawful authority to violently elbow Plaintiff in the eye after he was already handcuffed, secured, and not at risk of flight. *See Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000).

Thus, the Court finds that the evidence in this case is sufficient to defeat Officer Diaz's claim to qualified immunity from the section 1983 excessive force claim because a reasonable

jury could rely on the evidence to find that Officer Diaz violated Plaintiff's clearly established constitutional rights by elbowing him in the eye after he was already handcuffed and secured. Moreover, as Officer Diaz's post-arrest physical contact with Plaintiff went beyond the scope of the physical contact which was necessary to effect Plaintiff's arrest, Officer Diaz's argument with respect to Plaintiff's battery claim must also fail. Accordingly, Officer Diaz's motion must be denied with respect to Plaintiff's excessive force and battery claims.

### B. Intentional Infliction of Emotional Distress

Officer Diaz argues that, even assuming all of Plaintiff's allegations are true, the facts of this case fail to establish that Officer Diaz's conduct was outrageous enough, or that Plaintiff suffered emotional distress sufficient enough, to support a claim for intentional infliction of emotional distress. Plaintiff's response merely recites the elements of a claim for intentional infliction of emotional distress and asserts in conclusory fashion that Officer Diaz's conduct was "outrageous, that is, it went beyond all bounds of decency, and was odious and utterly intolerable in a civilized community such as the City []."

Plaintiff may recover for intentional infliction of emotional distress only if Officer Diaz's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Borneisen v. Capital One Fin. Corp.*, 490 F. App'x 206, 213 (11th Cir. 2012) (quoting *Johnson v. Thigpen*, 788 So. 2d 410, 412-13 (Fla. 1st DCA 2001)). The elements of a claim for intentional infliction of emotional distress are: "1) extreme and outrageous conduct; 2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; 3) severe emotional distress suffered by the plaintiff; and 4) proof that the conduct caused the severe emotional distress." *R.W. v. Armor Corr. Health Servs., Inc.*, 830 F. Supp. 2d 1295, 1304

11

(M.D. Fla. 2011). "Generally, the case is one in which the recitation of facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Borneisen*, 490 F. App'x at 213 (citing *Johnson*, 788 So. 2d at 412-13). Whether alleged conduct rises to this level is a question of law. *Id.* (citing *Gandy v. Trans World Comp. Tech. Grp.*, 787 So. 2d 116, 119 (Fla. 2d DCA 2001)).

As a preliminary matter, courts uphold claims of intentional infliction of emotional distress only in "extremely rare circumstances," and the conduct complained of in this case is insufficient as a matter of law to qualify as extreme and outrageous conduct. *See Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278 (Fla. 1985). Moreover, Plaintiff has failed to come forward with competent evidence upon which a jury might rely to find that Plaintiff suffered severe emotional distress as a result of this incident. Accordingly Officer Diaz is entitled to summary judgment with respect to Plaintiff's claim for intentional infliction of emotional distress.

### C. Negligent Hiring, Supervision, and Retention

"The negligent hiring, retention[,] or supervision of an incompetent, dangerous agent or servant under circumstances which establish that the employer knew or should have known of the agent's or servant's incompetence and dangerousness, and the likelihood or foreseeability that the agent would injure a third person, is long established as a basis for tort liability under Florida law." *Jackson v. Montesino*, No. 08-80554-CIV, 2009 WL 1515511, at *9 (S.D. Fla. June 1, 2009) (citing *Mallory v. O'Neil*, 69 So. 2d 313 (Fla. 1954). The viability of this tort claim notwithstanding, at the current stage of this action, Plaintiff must come forward with competent evidence supporting his allegations of negligence or see his claims dismissed. In its motion, the

City argues that it is entitled to summary judgment on Plaintiff's state law negligence claims because Plaintiff has failed to carry his burden.

As a preliminary matter, the record bears out that Officer Diaz was screened and investigated in accordance with the Police Department's administrative directive on applicant criteria. *See* DE 73-41. Indeed, Plaintiff cites to the report of Officer Ruben Yero, who was delegated the task of conducting a background check on Officer Diaz when he applied to be a reserve officer with the City, which states, "I personally met with representatives of [Officer] Diaz's prior empoyer, the City of Hialieah . . . [and] none of the information that I received or reviewed during my investigation indicated that Jorge Diaz was unqualified to serve as a City police officer or was otherwise unfit to perform as a City reserve police officer." DE 75 at 9. The pre-employment screening and investigation concluded that there was nothing in Officer Diaz's employment history which would have counseled against his hire. Moreover, when Officer Diaz applied to be a full-time police officer in 2006, the City assigned another officer to investigate Officer Diaz and prepare a memorandum on his fitness for hire. This further investigation came to the same conclusion.

Plaintiff's argument regarding the City's pre-employment screening blatantly ignores the pre-employment reports. The record bears out that the City performed a background check on Officer Diaz, evaluated the incidents Plaintiff complains it did not, and determined Officer Diaz was fit for employment. Moreover, there is nothing in the record which could have put the City on notice of any particularized problem with Officer Diaz's application of force or tendency to make arrests without probable cause that would have warranted additional training, supervision, or caused the City to reconsider retaining him as an employee prior to May 23, 2009. Finally, even if the record did support Plaintiff's allegations of negligent hiring, supervision, and

retention, the City would be entitled to immunity from tort liability, as these are classic examples of "discretionary" types of governmental functions by municipalities into which courts are precluded from intervening under the separation of powers doctrine. *Dep't of Health and Rehabilitative Servs. v. Yamuni*, 529 So. 2d 258, 260 (Fla. 1988). Accordingly the City is entitled to summary judgment in its favor on Plaintiff's state law negligence claims.

## IV. CONCLUSION

Therefore, it is **ORDERED, ADJUDGED and DECREED:**

1. Defendant JORGE DIAZ's Motion for Summary Judgment and Incorporated Memorandum of Law **(DE 56)** be, and the same is, hereby **GRANTED IN PART and DENIED IN PART**. Specifically, insofar as the motion seeks summary judgment in favor of Officer Diaz and against Jose Triana on the intentional infliction of emotional distress claim (Count II), the false arrest claim (Count V), and the false arrest component of the section 1983 claim (Count VI), the motion is **GRANTED**; and insofar as the motion seeks summary judgment in favor of Officer Diaz and against Jose Triana on the battery claim (Count I) and the excessive use of force component of the section 1983 claim (Count VI), the motion is **DENIED**.

2. Defendant CITY OF WEST MIAMI's Motion for Summary Judgment and Incorporated Memorandum of law **(DE 57)** be, and the same is, hereby **GRANTED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 16th day of October, 2014.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc: All counsel of record.